# Exhibit A

FOIA Request for Records Related to ICE's Updated Policy on Use of
Special Management Units (Dec. 20, 2024)



December 20, 2024

**SUBMITTED ELECTRONICALLY**

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009

Re:    **FOIA Request for Records Related to ICE's Updated Policy on Use of Special Management Units
(Fee Waiver & Expedited Proceeding Requested)**

Dear Freedom of Information Officer:

This letter is a request for records ("Request") made pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, and the relevant implementing regulations, *see* 6 C.F.R. § 5 *et seq.* The Request is submitted by the American Civil Liberties Union Foundation ("ACLU" or "Requestor").

Requestor seeks the disclosure of the updated policy or policies described in U.S. Immigration and Customs Enforcement's ("ICE") December 6, 2024 Statement regarding the agency's updated policies on the use of Special Management Units.

Requester also seeks a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k), and expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(d). The justifications for the fee waiver and expedited processing are set out in detail below.

## I.    Background

On Dec. 6, 2024, ICE announced that it had issued policy updates for the use of special management units (SMU), or solitary confinement cells, for detained immigrants.  ICE stated that "the updated Enforcement and Removal Operations policy focuses on how ICE tracks and reports the use of segregation and adds additional emphasis for ensuring the safety and welfare of detained noncitizens and facility staff as well as how the agency records and tracks these placements."[1] ICE, however, has not made a copy of the updated policy publicly available.

## II.    Records Requested

---

[1] ICE, *ICE Updates Policies on Use of Special Management Units*, Dec. 6, 2024, https://www.ice.gov/news/releases/ice-updates-policies-use-special-management-units [https://perma.cc/2NLS-4V8C].



This Request seeks a copy of ICE Enforcement and Removal Operations policy and/or policies related to the use of Special Management Units for detained non-citizens, as referenced in ICE's December 6, 2024 announcement, *ICE Updates Policies on Use of Special Management Units*.[2]

## III.  Fee Waiver Request

Requestor requests that any fees associated responding to its FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests. Requestor also requests a waiver or reduction of fees on the grounds that it qualifies as "representative[s] of the news media" and the records are not sought for commercial use. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II); 6 C.F.R. § 5.11(d)(1).

### A.  *Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of the operations and activities of government.*

*First*, disclosure pursuant to this Request is in the public interest. ICE's use of special management units, or solitary confinement units, have prompted active concern and attention from Congress, the media, and advocates. In recent months, over 47 members of Congress have written to the Department of Homeland Security raising concern about the use of solitary confinement in immigration detention facilities.[3] On April 16, 2024, the U.S. Senate Judiciary Committee held a hearing, *Legacy of Harm: Eliminating the Abuse of Solitary Confinement*, which covered the harms caused by the use of solitary confinement in ICE detention.[4] Senator Richard Durbin likewise introduced S. 4119, the *Restricting Solitary Confinement in Immigration Detention Act of 2024*.[5]

Multiple national news outlets have covered ICE's widespread and abusive use of solitary confinement. For example, a recent report released by Harvard Law School and Physicians for Human Rights concluded that ICE used solitary confinement more than 14,000 times in the past five years, including on many people with preexisting mental health conditions and other

---

[2] *Id.*
[3] Letter from 47 Members of Congress to DHS Secretary Alejandro Mayorkas, Apr. 15, 2024, https://jayapal.house.gov/wp-content/uploads/2024/04/Solitary-Letter-final.pdf [https://perma.cc/6QMF-T3U5].
[4] U.S. Senate Committee on the Judiciary, *Legacy of Harm: Eliminating the Abuse of Solitary Confinement*, 118th Cong. Apr. 16, 2024, https://www.judiciary.senate.gov/committee-activity/hearings/legacy-of-harm-eliminating-the-abuse-of-solitary-confinement [https://perma.cc/77EC-M8ZH].
[5] Restricting Solitary Confinement in Immigration Detention Act of 2024, S. 4119, 118th Cong. (2023-24).



vulnerabilities.[6] The *New York Times* covered ICE's increasing use of solitary confinement for immigrants, noting that the "average length of solitary detainment was longer than the duration the U.N. says can constitute torture."[7] Other news outlets, including the *Los Angeles Times*, NBC News, have also reported on ICE's practice of solitary confinement.[8]

Advocates have likewise raised concern with ICE's use of solitary confinement: on February 29, 2024, almost 200 immigrant rights organizations sent a letter to DHS calling for the end of the practice of solitary confinement in immigration detention centers.[9] Disclosure of the information sought in the Request will contribute significantly to the public's understanding of ICE's use of solitary confinement in immigration detention.

**B.** ***Disclosure is not primarily in the commercial interest of the Requestor.***

*Second*, Requestor is not filing this request to further a commercial interest. Requestor is a 501(c)(3) nonprofit organization and therefore has no commercial interest. Requestor intends to make any relevant information obtained through this FOIA available to the public.[10] Requestor publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. These materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students, and faculty, for no cost or for a nominal fee.

Requestor also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which Requestor is focused. Requestor's website also includes many features on information obtained through FOIA requests. For example, the ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related

---

[6] Physicians for Human Rights, Harvard Law School, *"Endless Nightmare": Torture and Inhuman Treatment in Solitary Confinement in U.S. Immigration Detention*, Feb. 6, 2024, https://phr.org/our-work/resources/endless-nightmare-solitary-confinement-in-us-immigration-detention/.

[7] Emily Baumgaertner, *Federal Records Show Increasing Use of Solitary Confinement for Immigrants*, N.Y. Times, Feb. 6, 2024, https://www.nytimes.com/2024/02/06/health/solitary-confinement-immigrants-us.html.

[8] Andrea Castillo, *ICE Kept a California Immigrant in Solitary Confinement for Two Years, Study Finds*, L.A. Times, Feb. 6, 2024, https://www.latimes.com/politics/story/2024-02-06/ice-immigrants-in-solitary-confinement; Erik Ortiz, *ICE Use of Solitary Confinement in "Violation of International Norms," Democratic Lawmakers Say*, NBC News, Mar. 29, 2024, https://www.nbcnews.com/news/us-news/ice-use-solitary-confinement-violation-international-norms-democratic-rcna144745.

[9] Letter from 194 Immigrant Rights Organizations to DHS Sec. Mayorkas, *End Solitary Confinement in ICE Detention,* Feb. 29, 2024, https://aijustice.org/2024/02/29/end-solitary-confinement-in-ice-detention/.

[10] *See* 6 C.F.R. § 5.11(k)(1)(ii); 6 C.F.R. § 5.11(k)(3).



to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves.[11] Requestor has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has obtained through the FOIA. For example, in February 2017 the ACLU produced an analysis of documents released in response to a FOIA request about the TSA's behavior detection program. Based on information obtained from a February 2018 FOIA for records about ICE's practice of misrepresenting or concealing their identity when conducting enforcement actions, the ACLU has both sued to stop these practices and provided community resources on the practice.[12] Requestor plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and Requestor plans to disseminate the information disclosed as a result of this Request to the public at no cost.

C. *Requestor also qualifies for a fee waiver because it is a representative of the news media and the records are not sought for commercial use.*

Requestor is also entitled to a waiver of search fees on the grounds that it qualifies as "representative[s] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). Requestor meets the statutory and regulatory definitions of "representative[s] of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see also Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").

Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of Requestor's work and are among its primary activities. For example, the ACLU regularly publishes *ACLU Magazine* that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 950,000 households. The ACLU also publishes regular updates and alerts via email to approximately 4 million subscribers (both ACLU

---

[11] *See also FOIA Database Regarding the U.S. Government's Violent Extremism Initiatives*, ACLU, https://www.aclu.org/foia-collection/cve-foia-documents; *TSA Behavior Detection FOIA Database*, ACLU, https://www.aclu.org/foia-collection/tsa-behavior-detection-foia-database; *Targeted Killing FOIA Database*, ACLU, https://www.aclu.org/foia-collection/targeted-killing-foia-database.

[12] *See* ACLU of S. Cal., Kidd v. Mayorkas, *available at* https://www.aclusocal/en/cases/kidd-v-mayorkas (describing lawsuit and case developments); ACLU of S. Cal., ICE Not Welcome: Verify, Document, and Report, *available at* https://www.aclusocal.org/icenotwelcome (community resources).



members and nonmembers). These updates are additionally broadcast to 4.9 million social media followers (members and non-members). The magazine, email, and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

Requestor also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news,[13] and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.[14] Similarly, Requestor regularly publishes and disseminates reports that include a description and analysis of government documents obtained through FOIA requests.[15] This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.

Requestor also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties. The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia.

---

[13] *See, e.g.*, Press Release, ACLU, U.S. Releases Drone Strike 'Playbook' in Response to ACLU Lawsuit (Aug. 6, 2016), https://www.aclu.org/news/us-releases-drone-strike-playbook-response-aclu-lawsuit; Press Release, ACLU, CIA Releases Dozens of Torture Documents in Response to ACLU Lawsuit (June 14, 2016), https://www.aclu.org/news/cia-releases-dozens-torture-documents-response-aclu-lawsuit; Press Release, ACLU, U.S. Releases Targeted Killing Memo in Response to Long-Running ACLU Lawsuit (June 23, 2014), https://www.aclu.org/national-security/us-releases-targeted-killing-memo-response-long-running-aclu-lawsuit.
[14] *See, e.g.*, Cora Currier, *TSA's Own Files Show Doubtful Science Behind Its Behavior Screening Program*, Intercept (Feb. 8, 2017), https://theintercept.com/2017/02/08/tsas-own-files-show-doubtful-science-behind-its-behavior-screening-program/ (quoting ACLU attorney Hugh Handeyside); ABC News, *What Newly Released CIA Documents Reveal About 'Torture' in Its Former Detention Program,* ABC News (June 15, 2016), http://abcn.ws/2jy40d3 (quoting ACLU staff attorney Dror Ladin); Nicky Woolf, *US Marshals Spent $10M on Equipment for Warrantless Stingray Surveillance*, Guardian (Mar. 17, 2016), https://www.theguardian.com/world/2016/mar/17/us-marshals-stingray-surveillance-airborne (quoting ACLU attorney Nate Wessler).
[15] *See, e.g.*, Manar Waheed, *Customs and Border Protection Violated Court Orders During the First Muslim Ban Implementation* (Jan. 24, 2018), https://www.aclu.org/blog/immigrants-rights/ice-and-border-patrol-abuses/customs-and-border-protection-violated-court; Vera Eidelman, *We Sued for Records About Trump's Muslim Bans. Here's What We Found Out.* (Oct. 24, 2017), https://www.aclu.org/blog/immigrants-rights/ice-and-border-patrol-abuses/we-sued-records-about-trumps-muslim-bans-heres; Carl Takei, *ACLU-Obtained Emails Prove that the Federal Bureau of Prisons Covered Up Its Visit to the CIA's Torture Site* (Nov. 22, 2016), https://www.aclu.org/blog/speak-freely/aclu-obtained-emails-prove-federal-bureau-prisons-covered-its-visit-cias-torture; Galen Sherwin et al., ACLU, Leaving Girls Behind: An Analysis of Washington D.C.'s "Empowering Males of Color" Initiative (May 27, 2016), https://www.aclu.org/report/leaving-girls-behind.



Underscoring this point, courts have found that other organizations whose mission, function, publishing, and public education activities are similar in kind to Requestor's are "representatives of the news media" as well. *See, e.g.*, *Elec. Privacy Info. Ctr. v. U.S. Dep't of Def.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive v. U.S. Dep't of Def.*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *Jud. Watch, Inc. v. U.S. Dep't of Just.*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a non-profit "public interest law firm," a news media requester).[16]

As representatives of the news media, Requestor plans to analyze and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use. On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media."[17] A fee waiver would fulfill Congress's legislative intent in amending FOIA.[18] Additionally, on account of these factors, Requestor has not been charged fees associated with responding to FOIA requests on numerous occasions.[19]

In sum, because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the Requestor, and Requestor is a representative of the news media, Requestor is entitled to a total waiver of fees associated with this Request and

---

[16] Courts have found organizations to be "representatives of the news media" even though they engage in litigation and lobbying activities beyond their dissemination of information and public education activities. *See, e.g.*, *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 6; *Nat'l Sec. Archive*, 880 F.2d at 1387; *see also Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 260 (D.D.C. 2005); *Judicial Watch, Inc.*, 133 F. Supp. 2d at 53-54.

[17] For example, in May 2016, the FBI granted a fee-waiver request regarding a FOIA request submitted to the DOJ for documents related to Countering Violent Extremism Programs. In April 2013, the National Security Division of the DOJ granted a fee-waiver request with respect to a request for documents relating to the FISA Amendments Act. Also in April 2013, the DOJ granted a fee-waiver request regarding a FOIA request for documents related to "national security letters" issued under the Electronic Communications Privacy Act. In August 2013, the FBI granted the fee-waiver request related to the same FOIA request issued to the DOJ.

[18] *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) ("Congress amended FOIA to ensure that it be 'liberally construed in favor of waivers for noncommercial requestors.'") (citation omitted); *Citizens for Responsibility and Ethics in Washington v. U.S. Dept. of Educ.*, 593 F. Supp. 2d 261, 268 (D.D.C. 2009) ("[FOIA's] purpose . . . is to remove the roadblocks and technicalities which have been used by . . . agencies to deny waivers.") (internal quotation marks and citation omitted).

[19] For example, in August 2016, the ICE FOIA Office and DHS Privacy Office both granted fee waivers to the ACLU for a FOIA request seeking a DHS OIG super-memorandum and ICE's response to that memorandum. Similarly, in March 2016, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about selected deaths in detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office. In July 2015, the ICE Office of the Principal Legal Advisor granted a fee waiver to the ACLU for a FOIA request seeking records about the use of segregation in ICE detention, reversing an incorrect denial of a fee waiver by the ICE FOIA Office.



should, in no event, be required to pay more than reasonable standard charges for document duplication. In the event that you decide not to waive the fees, please provide us with prior notice so that we can discuss arrangements.

## IV.    **Expedited Processing Request**

Requestor requests expedited processing of this Request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e). There is a "compelling need" for these records, as defined in the statute, due to the unique harms caused by solitary confinement that could pose an imminent threat to the life or physical safety of an individual, and because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. § 5.5(e)(1)(ii).

### A.    *There is a compelling need for these records due to the threat to the lives and physical safety of detained immigrants in solitary confinement.*

Failure to obtain the requested records on an expedited basis could reasonably be expected to pose an imminent threat to life or physical safety of an individual. The use of solitary confinement can cause "a range of adverse health effects, including post-traumatic stress disorder (PTSD), self-harm, and suicide risks. Prolonged confinement can lead to lasting brain damage, hallucinations, confusion, disrupted sleep, and reduced cognitive function. These effects persist beyond the confinement period, often resulting in enduring psychological and physical disabilities, especially for people with preexisting medical and mental health conditions or other vulnerabilities."[20]

### B.    *Requestor is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.*

Requestor is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). As detailed *supra*, Requestor has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials, to the public at no cost. Indeed, obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of Requestor's work and are among its primary activities. *See ACLU*, 321 F. Supp. 2d at 29 n.5 (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a

---

[20] Physicians for Human Rights, Harvard Law School, *"Endless Nightmare": Torture and Inhuman Treatment in Solitary Confinement in U.S. Immigration Detention*, Feb. 6, 2024, https://phr.org/our-work/resources/endless-nightmare-solitary-confinement-in-us-immigration-detention/.



distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").[21]  Moreover, as mentioned *supra*, Requestor intends to distribute the information obtained through this FOIA request via its website and/or other means available to it.

### C. *The records sought are urgently needed to inform the public about actual or alleged government activity.*

The requested records are also urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II). Specifically, the requested records pertain to ICE's use of solitary confinement of immigrants in detention.

Detention of noncitizens, and ICE's use of solitary confinement, is a matter of significant government activity and public interest. [22] As noted above, the use of solitary confinement in ICE detention is a matter of widespread media interest. Members of Congress have repeatedly raised concerns, held hearings, and introduced legislation to curb the use of solitary confinement in ICE custody. The requested records will inform the public of activity by ICE and DHS. 5 U.S.C. § 552(a)(6)(E)(i)(I).

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(e)(3).

Thank you for your prompt attention to this Request. We look forward to your reply to this Request within ten (10) business days, as required under 5 U.S.C. § 552(a)(6)(E)(ii) and 6 C.F.R. § 5.5(e)(4). Please furnish all responsive records to:

---

[21] Courts have found that the ACLU as well as other organizations with similar missions that engage in information-dissemination activities similar to the ACLU are "primarily engaged in disseminating information." *See, e.g.*, *Leadership Conference on Civil Rights*, 404 F. Supp. 2d at 260; *ACLU*, 321 F. Supp. 2d at 29 n.5; *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d at 11.

[22] *See, e.g.* Ted Hesson, Mica Rosenberg, and Kristina Cooke, *Biden Vowed to Reform Immigration Detention. Instead, Private Prisons Benefited*, Reuters, Aug. 7, 2023, https://www.reuters.com/world/us/biden-vowed-reform-immigration-detention-instead-private-prisons-benefited-2023-08-07/; Jose Olivares, *Investigators Wanted to Close an Abusive ICE Facility. Biden's Administration Extended Its Contract*, The Appeal, Jul. 25, 2024, https://theappeal.org/biden-admin-extended-contract-abusive-ice-detention-center/; Austin Fisher, *Torrance County Commission Votes to Extend ICE Contract*, Source New Mexico, Apr. 25, 2024, https://sourcenm.com/2024/04/25/torrance-county-commission-votes-to-extend-ice-contract/; Allison Kite, *Shuttered Private Jail in Leavenworth Could Become ICE Detention Center*, Kansas Reflector, Sept. 6, 2023, https://kansasreflector.com/2023/09/06/shuttered-private-jail-in-leavenworth-could-become-ice-detention-center/; Jose Abonce, *ICE Detains Illinois Immigrants in Out-of-State Jails*, South Side Weekly, Dec. 6, 2023, https://southsideweekly.com/ice-detains-chicago-immigrants-in-wisconsin-despite-illinois-way-forward-act/.



Eunice Cho
American Civil Liberties Union
National Prison Project
915 15th St. NW
Washington, DC 20005
echo@aclu.org

    If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA. We expect the release of all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information, or to deny a waiver of fees. Please email or call me at the contact information above if you have any questions or wish to obtain further information about the nature of the records in which we are interested.

Sincerely,

Eunice Cho
Staff Attorney
ACLU National Prison Project